R. A. VANDEL, Appellant,

v.

Vernon E. SEITZ, Appellee.

No. 7683.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 12, 1965.

Leonard C. Kahn, Houston, for appellant.

H. H. Prewett, Hellmut A. Erwing, Foreman, Dyess, Prewett, Henderson & Cantey, George W. Eddy, Houston, for appellee.

FANNING, Justice.

This suit arises from an intersectional collision in the city of Houston between appellant's motorcycle and an automobile driven by appellee.

Appellee admitted and conceded that his act of making a left turn in the face of a "No Left Turn" sign constituted primary negligence and was a proximate cause of the accident.

However, appellee plead and contended that appellant was guilty of contributory negligence in failing to keep a proper lookout, in failing to make proper application of his brakes and in operating his motorcycle at an excessive rate of speed under the circumstances, and that such acts of negligence were each a proximate cause of the accident.

Trial was to the court with the aid of a jury. The jury in response to special issues submitted found against the appellant on the three above referred to contributory negligence issues and also found against appellant on the associated proximate cause issues relating to said three acts of contributory negligence of appellant. The trial court rendered judgment that appellant take nothing. Appellant filed two motions for new trial—the second motion was based upon allegedly newly discovered evidence. Both motions for new trial were overruled. Appellant has appealed.

Appellant by his first point contends that the trial court erred in failing to sustain plaintiff's motion for a directed verdict as to the liability in this case.

In determining whether the trial court erred in failing to sustain plaintiff's motion for directed verdict as to liability in

this cause, we must determine whether the record in this cause contains any admissible evidence of probative force raising any of the three pleaded controverted contributory negligence issues with an appropriately associated proximate cause issue, and in doing so we are guided by certain well-established rules of law.

When material facts are controverted, or are such that different inferences may be reasonably drawn therefrom, the question of fact thus raised should be submitted to the jury; it is only when the evidence is harmonious and consistent, and the circumstances permit but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised "if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." Wininger v. Fort Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150 (1912); Maryland Casualty v. Morua, Tex.Civ.App., 180 S.W.2d 194, writ refused (1944).

If, however, the probative force of the evidence is so slight that it raises only a "mere surmise or suspicion of the existence of the fact sought to be established", it is in legal contemplation no evidence at all, and it is the duty of the trial court to direct a verdict. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898).

Appellant also contends by points 2, 3 and 4 to the effect that the trial court erred in submitting to the jury special issues 1, 2, 3, 4, 5 and 6, relating to the three contributory negligence issues and associated proximate cause issues, because of "no evidence" to support submission, and that the jury's affirmative answers thereto were supported by "no evidence", that the evidence was "insufficient" and that the jury's responses to said issues were so against the great weight and preponderance of the evidence as to be clearly wrong.

For a comprehensive discussion of the law applicable to the determination of "no evidence" and "insufficient evidence" points see Chief Justice Calvert's article, " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Tex.Law Rev., No. 4, p. 361.

Appellant Vandel was a motorcycle policeman of the City of Houston. On the occasion of the collision in question he was going home from work on his motorcycle. At the trial on the merits Vandel testified and contended to the effect that he was knocked unconscious and that he did not recall having the accident but that he did recall the events prior to the accident up to about a mile from the collision point. (Later, after the adverse verdict and judgment, and in his second motion for new trial, appellant Vandel contended to the effect that he had recovered his memory of the accident and unsuccessfully sought a new trial on the grounds of allegedly newly discovered evidence by reason of regaining his memory as to the events of the accident.) At the trial Vandel testified to the effect that he was going home from the police station, about 1:30 A.M., in the night time, going out Washington Avenue to the Hempstead Highway, which was his usual route home, and was familiar with the Washington Avenue-Heights Boulevard intersection where the accident in question occurred, and knew that there were traffic lights there, and told of the "No Left Turn" sign located there, that he was proceeding at his usual speed, between 25 and 30 miles an hour, where he passed the "Pig Stand", the last time he remembered before the collision, that the "Pig Stand" was about a mile from the place of the collision. According to Vandel's testimony he did not recall anything from the "Pig Stand" about a mile from the scene of the collision until he waked up in a hospital bed. Thus on the trial appellant Vandel did not testify as to his speed within a mile of the collision, nor did he testify as to keeping a proper lookout or proper ap-

plication of his brakes at the time of the collision.

Appellee Seitz was driving Mrs. McIntire's automobile at the time of the collision. Mrs. McIntire was a defendant also, but the trial court instructed a verdict in her favor which judgment has not been appealed from.

There is a conflict between the evidence of appellant's witness Caffey and defendant Dorothy Sojak McIntire with respect to Vandel's speed. According to Caffey's testimony (Caffey did not actually see the collision but heard it) he was driving his automobile about 25 or 30 miles per hour on the occasion in question and that he noticed the motorcycle's lights behind him and testified to the effect that the motorcycle did not gain on him. Mrs. McIntire's testimony is to the effect that Vandel was traveling toward appellee Seitz at a speed of between 40 and 50 miles per hour, that she first noticed Vandel's light approaching the intersection from an easterly direction, and at the time of appellee's left turn maneuver, appellant's light was a good half block away from the intersection.

Appellee testified to the effect that he did not notice appellant's light until appellee had made the left turn and at that time appellant's motorcycle was 100 or 150 feet back east on Washington.

There was testimony to the effect that a vehicle traveling at 30 mph, appellant's alleged speed, would need 75 feet to come to a full stop, with proper braking. Appellee in his brief argues that if it be assumed that appellant saw appellee's vehicle no earlier than appellee saw appellant's vehicle, that appellant should have been able to bring his vehicle to a full stop before striking appellee, provided if in truth appellant was not traveling in excess of 30 mph.

The testimony of appellee and Mrs. McIntire is to the effect that appellant's motorcycle struck Mrs. McIntire's car broadside and that Vandel catapulted over Mrs. McIntire's car after striking said car with much force. Pictures in evidence of Mrs. McIntire's automobile substantiate the testimony that Vandel's motorcycle struck the McIntire car broadside with much force. Appellee argues in his brief that the damages shown to both vehicles and the fact that appellant Vandel catapulted over Mrs. McIntire's vehicle indicates a high rate of speed on the part of appellant Vandel at the time of impact.

With respect to appellant's lookout, appellee in his brief states and argues in part as follows: (we omit appellant's various references to the Statement of Facts.)

"Prior to executing a left turn from Washington Avenue to Heights Boulevard, Appellee was completely stopped in obedience to a red traffic signal at the intersection of Heights and Washington. Before proceeding to turn left out of the lane closest to the esplanade on the west side of the intersection, Appellee put his left blinker light on. There were traffic lanes behind Appellee's car which were open and unoccupied. There was no traffic or any other impediment between Appellee's car and the center line of Washington Avenue that would have prevented Appellant from going around the back of Appellee's car. Appellee had his headlights on. As Appellee executed his left turn, there were no cars approaching the intersection. Appellee first noticed Appellant's motorcycle when Appellee was pretty well straightened out on Heights at which time Appellant's vehicle was 100 or 150 feet back east on Washington. Mrs. McIntire first noticed Appellant's motorcycle light during the left turn at which time Appellant's vehicle was a good half block from the intersection.

"There was nothing to obstruct Appellant's view of the intersection or of Appellee's vehicle. Plaintiff's Exhibits Nos. 1 and 2 show that there was ample street lighting in the intersection. There is no evidence in the record

that there were any weather conditions impeding visibility."

With respect to appellant's application of brakes, appellee in his brief states and argues in part as follows: (we omit appellee's various references to the Statement of Facts.)

"In order for Appellant's motorcycle to come to a full and complete stop, both front and back wheels must be completely locked. Appellant's back wheel brakes are foot operated and his front wheel brakes are hand operated. The brakes can be operated independently of each other. Officer Fain agreed on cross-examination that the skid marks laid down by Appellant's motorcycle were made by a wheel that was not locked. The skid marks laid down by Appellant's motorcycle were made by the rear wheel. There is no evidence that Appellant ever applied the brakes controlling his front wheel. Officer Fain described the skid marks as 'in a straight line', 'light and dark intermittent skids.' Officer Fain could not point out any definite skid marks on Plaintiff's Exhibit No. 1 and Defendant's Exhibit No. 4 which were pictures taken shortly after the accident. * * *"

The evidence of the physical facts was of some probative force. Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407 (1943).

Both negligence and proximate cause may be inferred from circumstances. Bock v. Fellman Dry Goods Co., Tex.Com.App., 212 S.W. 635 (1919).

The credibility of the witnesses and the weight to be given their testimony was a matter for the jury to determine.

In Seay v. Kana, Tex.Civ.App., 346 S.W. 2d 384, no writ (1961) it was stated in part as follows:

"* * * Failure to keep a proper lookout may be established by circumstantial evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273. The jury had before it pictures of the intersection and its approaches. *There is nothing in the record showing that appellant, before he reached the intersection, could not have seen appellee. The jury could have concluded that since appellee saw appellant when appellant was three car lengths back of the intersection, appellant could have seen appellee had he looked toward his left. * * *"* Emphasis added.

We hold that the trial court did not err in failing to sustain plaintiff's motion for a directed verdict as to liability in this cause. Appellant's first point is overruled.

We hold that there was evidence of probative force to support the jury's findings to special issues 1, 2, 3, 4, 5 and 6, that the evidence was amply sufficient to support same, and that the trial court properly submitted said issues to the jury.

Also, after carefully considering and reviewing the entire record in this cause in the light of the rules announced in the case of In Re: King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952), we further hold that the jury's findings to special issues 1, 2, 3, 4, 5 and 6, are not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

Appellant's 2nd, 3rd and 4th points are overruled.

Appellant's remaining points are deemed as not presenting error under the record in this cause and are respectfully overruled.

The judgment of the trial court is affirmed.