**Edward TAYLOR et al., Plaintiffs-Appellants,**

v.

**Carolyn Marie BAIR et al., Defendants-Appellees.**

No. 26575.

United States Court of Appeals Fifth Circuit.

July 29, 1969.

Rehearing Denied Aug. 20, 1969.

Ernest L. Sample, Gilbert T. Adams, Beaumont, Tex., for appellants.

Howell E. Stone, Henry P. Giessel, John Mustachio, Houston, Tex., Talbert, Giessel, Barnett & Stone, Houston, Tex., for appellees.

Before GOLDBERG and MORGAN, Circuit Judges, and LIEB, District Judge.

GOLDBERG, Circuit Judge:

In this automobile accident case we are faced with the task of ferreting the record to determine whether the district court erred in directing a verdict in favor of the defendant, Mrs. Carolyn Marie Bair. Jury displacement through a directed verdict is a phenomenon only occasionally justified. We find no justification in the case before us.

This tragedy occurred in Beaumont, Texas, on the night of April 28, 1966. The defendant, Mrs. Bair, was driving west in the north lane of College Street Extension, a four lane street divided by a grass median strip. Mrs. Mavis Chow and the Ward children, Ricardo 4 years old and Chris 6 years old, were apparently crossing College Street Extension on their way to a trailer camp on the north side of the street. Chris crossed the road safely, but Ricardo and Mrs. Chow were killed when the automobile driven by Mrs. Bair struck them as they crossed the north lane of the highway.

The plaintiffs in this suit are Edward Taylor, husband of Mavis Chow, and the three children of Edward Taylor and Mavis Chow.[1] James Ward, the father

---

1. Mrs. Chow was a Chinese National married to Edward Taylor, a citizen of Nicaragua. Under the custom of Nicaragua, a woman does not lose her maiden name by marriage and children born during the marriage take the mother's name. This explains the way the names of the parties appear in the pleadings.

of Ricardo, subsequently intervened as a party plaintiff asking damages for the wrongful death of his four and one-half year old son, Ricardo.

Plaintiffs founded their cause of action on the alleged negligence of Mrs. Bair in operating her automobile at an excessive rate of speed and failing to keep a proper lookout. In presenting their case the plaintiffs were forced to rely on the defendant's admissions and the post-accident investigation. The only known eye witness was Chris Ward who did not testify. Thus, this case, in common with may other wrongful death cases, suffers from an evidential vacuity.

Mrs. Bair testified that she was traveling west in the north lane of the highway at a speed of 35 miles per hour when she noticed a young boy running away from the highway on the north shoulder. According to her testimony, Mrs. Bair then removed her foot from the accelerator and glanced in her rear view mirror to see if any cars were behind her. Seeing no one to the rear, Mrs. Bair looked back at the boy and then straight ahead. At that instant, according to her testimony, she saw Mrs. Chow and Ricardo about three feet in front of her car. Mrs. Bair said that she did not apply her brakes after striking the decedents but allowed her car to coast to a stop. Explaining her failure to brake Mrs. Bair said that Mrs. Chow had been thrown onto the hood of the car and a sudden stop might have thrown the victim back into the path of the car. She further testified that Ricardo was thrown off to the north side of the highway by the impact.

The police officer investigating the accident testified that according to the measurements taken after the accident the car traveled 238 feet from the point of impact; that the body of Ricardo was found 183 feet west of the point of impact; and that Mrs. Chow's body was found 218 feet west of the point of impact. He also stated that smears of blood on the highway indicated that Ricardo and Mrs. Chow skidded 28 and 30 feet respectively after they finally fell to the pavement. The policeman indicated that he found no evidence that Mrs. Bair was speeding at the time of the accident. However, when questioned further, he conceded that he did not know the speed required to catapult a pedestrian's body onto the hood of an automobile or to propel a body a given number of feet after impact. He further conceded that he did not know how to calculate the speed of Mrs. Bair's car from the measurements taken at the time of the accident.

On the basis of the foregoing evidence the trial judge directed a verdict for the defendants at the close of plaintiffs' case, thus frustrating the plaintiffs' demand for a jury trial. The defendants seek to justify jury disengagement because (1) there was no evidence of negligence on the part of Mrs. Bair; (2) "sudden emergency" was established as a matter of law; and (3) there was no evidence of damage of a pecuniary nature suffered by James Ward.

I. We approach appellees' first point concerning Mrs. Bair's negligence from the fundamental position that negligence is a judgmental concept which must be jury-determined unless under the facts of a specific case reasonable men could come to but one conclusion. Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365 [April 7, 1969].

The court must be ever alert to prevent the debasement of the jury in our judicial process. The responsibility of the jury must not be subject to judicial subordination except under those compelling circumstances most recently articulated in Boeing v. Shipman, *supra*, wherein we said:

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider *all* of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so

strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses. *Id.* at 374.

The question, therefore, is whether a jury could reasonably find on the facts presented and inferences raised that Mrs. Bair did fail to keep a proper lookout or did operate her vehicle at an excessive rate of speed. In making such a judgment the jury may pick and choose among facts and inferences restrained only by reason. It need not accept a single version where circumstances belie that conclusion. Sartor v. Arkansas Nat. Gas. Corp., 1943, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Aetna Life Ins. Co. v. Ward, 1890, 140 U.S. 76, 11 S.Ct. 720, 35 L.Ed. 371; Lynch v. Ricketts, 1958, 158 Tex. 487, 314 S.W.2d 273; Benoit v. Wilson, 1951, 150 Tex. 273, 239 S.W.2d 792; Sneed v. Fort Worth Transit Co., Tex.Civ.App.1968, 427 S.W.2d 920.

In Benoit v. Wilson, *supra*, the Texas Supreme Court stated:

"The jury is the exclusive judge of the facts proved, the validity of the witnesses and the weight to be given to the testimony. * * * The jury had the sole right to believe all or any part of petitioner's testimony. It had the right to say, and reasonably so, that from all the facts and circumstances in this case, we, the jury do not believe * * * your testimony * * *." *Id.*, 239 S.W.2d at 796–797.

In addition, Mrs. Bair being an interested witness brings into play the rule of permissible skepticism.

"As to the testimony of interested witnesses, the general rule is that, while the jury has no right arbitrarily to disregard the positive testimony of unimpeached and uncontradicted witnesses, the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury. Stated in another form, the rule is that the uncontradicted, uncorroborated testimony of a party to a suit will not authorize or support an instructed verdict." Flack v. First Nat. Bank of Dalhart, 1950, 148 Tex. 495, 226 S.W.2d 628 at 633.[2]

The only exception to the above rule arises when the following conditions are met: (1) The testimony of the interested witness is not contradicted by that of another witness or by attendant circumstances; and (2) the testimony is clear, direct, and positive as well as being free from contradiction, inaccuracies, and circumstances tending to cast suspicion on it. Ex Parte Rohleder, Tex.1967, 424 S.W.2d 891; Moss v. Hipp, Tex.1965, 387 S.W.2d 656; Cochran v. Wool Growers Central Storage Co., 1942, 140 Tex. 184, 166 S.W.2d 904.

In the case before us Mrs. Bair's statements are not so clear and uncontradicted by the circumstances as to carry this imprimatur of sanctified truth.

2. *Accord*, R. T. Herrin Petroleum Transport Co. v. Proctor, 1960, 161 Tex. 222, 338 S.W.2d 422.

The physical evidence presented by the investigating officer, together with Mrs. Bair's own testimony, indicates that the accident might in fact have been due to her improper lookout or excessive speed.

■ No static or immutable rule exists regarding proper lookout; consequently juries have found improper lookout in a variety of circumstances. City Transp. Co. of Dallas v. Davis, Tex.Civ. App.1953, 257 S.W.2d 476, *error ref. n. r. e.*; Bigelow v. Rupp, Tex.Civ.App. 1946, 192 S.W.2d 791, *error ref. n. r. e.*; Gillette Motor Transport, Inc. v. Kelly, Tex.Civ.App.1940, 141 S.W.2d 959; Stamper v. Scholtz, Tex.Civ.App.1930, 29 S.W.2d 883, *error ref*. It is clear, however, that in Texas a great duty of care is required when a motorist is aware of the presence of a child. In Lester v. Weddle, Tex.Civ.App.1968, 426 S.W.2d 618, *rem'd on other grounds*, Tex.1968, 431 S.W.2d 1, a case very similar to the one at bar, the court applied the rule found in Blashfield Cyclopedia of Automobile Law and Practice, Volume 4, Section 151.12:

"A motorist seeing a child or children in or near the street or highway must exercise a far greater degree of care and watchfulness than is required of him as to a pedestrian similarly placed who has reached the age of discretion; and a person driving on a city street through a crowd of children is required to exercise the greatest care possible for their safety. Accordingly, where an automobile driver sees a child in a place of danger, or has reason to apprehend that it might run into a place of danger, and has sufficient time to stop his car if under proper control, it is his duty to exercise such care as would be reasonably necessary to avoid a collision. The mere presence of children is itself a warning because of the unpredictable nature of their conduct.

"The degree or extent of care required of a motorist to avoid injury to a child may depend on whether the child was alone or was accompanied by an adult, greater care being required when the child is not accompanied by an adult.

"A driver of an automobile seeing children in or near the street or highway should take proper steps for their protection if under the circumstances he should anticipate that they will get in his way. He should turn as far away from them as is practicable under the circumstances, and must have his automobile under control.

"Where children are on the sidewalk and corners, it is the duty of a motorist to drive his machine at such a rate of speed as will give him control thereof in an emergency. Where the driver is aware of the presence of children he may be held responsible although it appears that he did not see the injured child in time to prevent the injury.

"However, there is no liability on the part of the motorist in the absence of negligence, since he is not an insurer." *Id.*, 426 S.W.2d at 622–623.

■ In view of the above rule the jury could have found that Mrs. Bair failed to keep a proper lookout at the time of the accident. By her own testimony, she admitted that upon seeing Chris Ward along the road she looked into her rear view mirror. She also admitted that her view ahead was unobstructed. Since she saw one child and there was nothing between her and the decedents, the jury could have believed that Mrs. Bair was not looking ahead as carefully as she should have been or she would have seen the decedents in time to stop or swerve her car into the other lane.

Appellants also alleged that Mrs. Bair was traveling at an excessive rate of speed. Excessive speed, like proper lookout, is a concept unsuitable for mechanical application. The gravamen of the allegation is not that the driver exceeded the statutory speed but that she was driving faster than an ordinary prudent person in the exercise of ordinary care would drive under the same circumstances. Fitzgerald v. Russ

Mitchell Constructors, Inc., Tex.Civ. App.1968, 423 S.W.2d 189, *error ref. n. r. e.*; Billingsley v. Southern Pacific Co., Tex.Civ.App.1966, 400 S.W.2d 789, *error ref. n. r. e.*; McMillan v. Gage, Tex.Civ.App.1942, 165 S.W.2d 754, *error ref. w. o. m.*

In the case before us the evidence regarding speed is certainly less than satisfying. The appellants introduced testimony as to the number of feet the car and the victims traveled after impact, suggesting that the jury could imply from this data and the damage sustained by the car that Mrs. Bair was going faster than she admitted. Unfortunately, however, there was no expert testimony translating these figures into miles per hour. Juries are not experts and cannot be expected to make the complicated mathematical computations necessary to make this information meaningful. *Cf.* Meeker v. Teer, Tex.Civ. App.1938, 122 S.W.2d 338, *error dism.*; San Antonio Public Service Co. v. Henry, Tex.Civ.App.1937, 102 S.W.2d 479, *but see* Briggs v. Lloyd, Tex.Civ.App. 1966, 405 S.W.2d 865, *error dism.*; Vandel v. Seitz, Tex.Civ.App.1965, 396 S.W. 2d 227.

Nevertheless, Mrs. Bair testified that she was going 35 miles an hour. She stated that she was familiar with the neighborhood, knew a trailer camp was nearby and upon seeing the first little boy wondered why he was that near the highway without an adult. Since impermissible rates of speed vary from circumstance to circumstance, *see, e. g.,* Gaines v. Bader, Tex.Civ.App.1952, 253 S.W.2d 1014 (3 mph); McMillan v. Gage, Tex.Civ.App.1942, 165 S.W.2d 754, *error ref. w. o. m.* (12 mph); Cate v. Holcomb, Tex.Civ.App.1963, 370 S.W.2d 422, *error ref. n. r. e.* (15 mph), the jury might have found that under these circumstances 35 miles an hour was excessive. This is particularly true since the jury could have believed that Mrs. Bair saw Chris and the decedents much earlier than her testimony indicated and for that reason would have been under a duty to substantially reduce her speed.

Lester v. Weddle, Tex.Civ.App.1968, 426 S.W.2d 618, *rem'd on other grounds*, Tex.1968, 431 S.W.2d 1; Esparza v. City, Tex.Civ.App.1927, 296 S.W. 979, *error dism.*

For the foregoing reasons we deny appellees' contention that as a matter of law Mrs. Bair was not negligent. On the other hand we do not hold that Mrs. Bair was negligent. We merely find that the jury would have been within the ambience of reason to find that she was negligent under the attending circumstances. Conversely, it would not do violence to reason and experience for a jury to find that she was free of negligence. If reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions the motion for a directed verdict should be denied and the case submitted to the jury. Boeing v. Shipman, *supra*. We find this to be the case here.

■ II. Appellees' second contention is that the directed verdict should be sustained because the existence of a sudden emergency was established as a matter of law. We do not think appellees can find refuge from potential liability in this manner. The Texas Supreme Court has defined emergency in the following terms:

"By the term 'emergency' as used in this charge, is meant a condition arising suddenly and unexpectedly and *not proximately caused by any negligent act or omission of the person in question* and which calls for immediate action on his part and without time for deliberation." Goolsbee v. Texas and N. O. R. Co., 1951, 150 Tex. 528, 243 S.W.2d 386 at 388. [Emphasis added.]

The doctrine is, therefore, only applicable when the one seeking its application was free of negligence before the emergency arose. Trezza v. Dame, 5 Cir. 1967, 370 F.2d 1006; Luper Transp. Co. v. Barnes, 5 Cir. 1949, 170 F.2d 880; Goolsbee v. Texas and N. O. R. Co., *supra*; Higginbotham v. Ritchie, Tex.Civ. App.1963, 367 S.W.2d 210. Were this

not the rule, once the period of peril incepted, all prior acts creating the peril would evanesce even though the one seeking to apply the doctrine was the catalyst for the entire tragedy.

■ If Mrs. Bair was free of fault prior to the time she had to act under peril, stress and emergency, her acts during the emergency are, as appellees assert, excusable. To say this, however, begs the primary question concerning the doctrine's applicability, i. e., whether Mrs. Bair's negligence contributed to the creation of the emergency. Our finding concerning appellees' first point, that the jury could reasonably have found that Mrs. Bair traveled at an excessive speed or failed to keep a proper lookout, precludes the applicability of the emergency doctrine to justify the directed verdict.

Lest there be misunderstanding, we reiterate that we do not hold that Mrs. Bair was negligent or that her negligence created the emergency in whole or in part. We merely hold that where reasonable men could differ as to the existence or non-existence of her prior negligence, the sudden emergency doctrine cannot be applied unless the negligence issue has been resolved in defendant's favor by the jury.

■ III. Appellees' last point in support of the directed verdict is that there was no evidence of damage of a pecuniary nature resulting from the death of Ricardo. This reed is too weak and unstable to justify affirming the directed verdict. The testimony of James Ward, Ricardo's father, establishes the fact that Ricardo was four and one-half years old at the time of the tragedy and was as bright as a normal child of that age. Nothing further was required.

■ Damages resulting from the death of a child do not permit arithmetic computation and the Texas courts have never required such. As early as 1888 the Texas Supreme Court approved a charge regarding damages for the death of a child which said, "* * * the value of the child's services during

the period of her minority is to be ascertained by you as best you can from your own judgment, common sense, and sound discretion, and the evidence before you." Brunswig v. White, 1888, 70 Tex. 504, 8 S.W. 85 at 87. The modern rule is much the same. Riojas v. Riojas, Tex.Civ.App.1956, 289 S.W.2d 802; Banker v. McLaughlin, Tex.Civ.App. 1947, 200 S.W.2d 699, aff'd 1948, 146 Tex. 434, 208 S.W.2d 843, 8 A.L.R.2d 1231; Jasper County Lumber Co. of Texas v. McMillan, Tex.Civ.App.1945, 188 S.W.2d 731, error ref. In Riojas v. Riojas, supra, the court remarked concerning proof of damages upon the death of a child.

"The evidence in this type of case from the very nature of things cannot furnish the measure of damages with that certainty and accuracy with which it may be done in other cases and, therefore, the question of damages must be left largely to the discretion of the jury." Id., 289 S.W.2d at 805.

On the other hand some evidence of pecuniary loss is still necessary to support a recovery. Brunswig v. White, supra; Banker v. McLaughlin, supra; Jasper County Lumber Co. of Texas v. McMillan, supra; Riojas v. Riojas, supra.

We are unable to say that here there was no evidence from which the jury could have found damages. Some matters are beyond proof and the loss suffered by a father through the death of his son is largely such a matter. On remand it would be desirable if some evidence were introduced concerning the degree of affection between Ricardo and his father, as well as Ricardo's past inclination to assist his father in ways typical of a four and one-half year old boy. Beyond this, the law does not exact or expect the impossible. Ricardo had no earning experience and no opportunity for education. The fact that his life was snuffed out at the threshold of these experiences should not prevent an award of damages based on a loving fili-

al relationship and normal expectation of economic maturity.

■ IV. Although appellees did not raise the issue in the motion for a directed verdict, for purposes of retrial we feel compelled to discuss the possible contributory negligence of the decedents. According to Texas law, a child is required to act only with such care as one could reasonably expect from a child of his age, and below a certain age a child as a matter of law cannot be guilty of contributory negligence. Rudes v. Gottschalk, 1959, 159 Tex. 552, 324 S.W.2d 201; Eaton v. R. B. George Investments, Inc., 1953, 152 Tex. 523, 260 S.W.2d 587; Dallas Ry. and Terminal Co. v. Rogers, 1949, 147 Tex. 617, 218 S.W.2d 456; City of Austin v. Hoffman, Tex.Civ.App.1964, 379 S.W.2d 103. We need not decide which category applies to the instant case. We merely note that Ricardo's tender years either immunize him from contributory negligence or it becomes a jury question whether he exercised the care expected of a four and one-half year old boy.

■ The record as it now stands also presents a jury question concerning the contributory negligence of Mrs. Chow. The defendant testified that Mrs. Chow had her hand outstretched toward Ricardo when the tragedy occurred. Mrs. Bair suggested that it looked as if Mrs. Chow was hurrying the little boy along. The jury, however, would be free to believe the equally plausible theory that Mrs. Chow put herself in danger while trying to catch Ricardo and rescue him from a position of obvious peril. In such a case the plaintiffs would be entitled to the benefits of the "rescue doctrine." One who attempts to rescue another placed in imminent peril by the negligence of the defendant is not to be found guilty of contributory negligence as a matter of law, nor does he assume the risk incident thereto unless he acts in a rash, imprudent or negligent manner. Kelley v. Alexander, Tex.Civ. App.1965, 392 S.W.2d 790, *error ref. n. r. e.*; Reddick v. Longacre, Tex.Civ.

App.1950, 228 S.W.2d 264, *error ref. n. r. e.*

■ It is not our conclusion that Mrs. Chow was in fact in the process of rescuing Ricardo from a position of peril created by Mrs. Bair's negligence. We only suggest that the jury could have so found but for the court aborting its function.

V. On the record as a whole we come to the conclusion that the court below erred in denying the jury its traditional fact finding role and instructing a verdict. Juries have their endowments. Trial court interference should be the exception and not the rule. We must be respectful of the wisdom of juries and while we as judges may not have found as the jury found, we must abide its result so long as their deliberations are reasonable. Vigilant we shall be to the end that the principle of the inviolability of our jury system is not subverted. Much has been written and much has been said about the variables and the variance in judge direction of verdicts. We neither add to nor subtract therefrom. We simply join the litany and chorus that the exiling of the jury is not the usual or the norm but the seldom.

The judgment below is vacated and the case remanded for a new trial.