**T. E. MERCER TRUCKING COMPANY and
Harvey Monroe Floyd, Jr., Appellants,**

v.

**William Travis SWOR, Appellee.**

No. 7246.

Court of Civil Appeals of Texas,
Beaumont.

July 29, 1971.

Rehearing Denied Aug. 26, 1971.

Renfrow, Zeleskey, Cornelius, Rogers &
Berry, Lufkin, for appellants.

Maroney & Cely, Lufkin, for appellee.

KEITH, Justice.

We review a judgment awarding damages for personal injuries and property damage arising out of a collision between an automobile and a truck-trailer combination. The accident occurred on a clear day on a straight, level, four-lane divided highway with both vehicles proceeding in the same direction. According to plaintiff, he was alone in his car and was proceeding north on U.S. Highway 59 in San Jacinto County enroute from Houston to Lufkin. He describes the highway as being composed of four lanes divided into two opposing routes of traffic separated by a grassy median. Each lane is approximately twelve feet in width and there is an improved shoulder on each side of each of

the opposing lanes of traffic. Only a white painted dividing stripe separates the two lanes in the northbound roadway.

Plaintiff testified that he was going at a speed of approximately sixty miles per hour and was in the outside or right-hand lane of the northbound roadway. He first observed in his rear view mirror a truck in the same lane some thousand yards to his rear, but did not continue to observe the truck thereafter. He testified that he continued in the same lane until he was struck from the rear by the truck which he had previously seen. The truck struck the left rear of his vehicle with its right front bumper, causing his car to be "turned completely around and slid sideways until it hit a fence", knocking down several fence posts on the easterly right-of-way line of the roadway, before coming to rest. After the impact, the truck continued some 1200 yards before stopping upon the right shoulder of the highway. There were no other vehicles in the area at the time of the accident, nor any witnesses other than our two drivers.

Plaintiff was positive that he continued in his righthand or outside lane at all times after observing the truck in his mirror until the time of the impact; he denied changing lanes or swerving to the left; but, he admitted that he did not observe the truck except the one time when it was far behind him. Plaintiff testified that when his vehicle was struck, the front of the truck overrode the rear of his car in the trunk area, forcing the bumper guard into the pavement where he later found a gouge mark. This mark, according to plaintiff (and he was corroborated in this by a highway patrolman), was near the white stripe which marked the division between the two northbound lanes, but inside of the outside lane thereof.

The truck driver, although a defendant in the cause, did not testify and his only explanation of the cause of the accident came from plaintiff's account of his conversations with the driver and the highway patrolman's version of his conversation with the two drivers. Upon direct examination by his counsel, plaintiff said that when the driver walked up to where he was, "he asked me what in the hell happened", to which plaintiff replied: "I don't know. You was driving it. I wasn't." Plaintiff then quoted the driver as having said, " 'I must have dropped off to sleep.' "

Highway patrolman Ryan, investigating the accident a short time later, talked with both drivers. He was tendered by plaintiff's counsel and, upon direct examination, testified that the truck driver told him (in plaintiff's presence) that plaintiff was in the outside lane and that he (the truck driver) was overtaking plaintiff's vehicle when "the car swerved into his lane of traffic and then back into—into his own." Defendants, upon cross-examination of the patrolman, elicited from him the fact that the truck driver also said that as he was attempting to pass plaintiff upon plaintiff's left side, plaintiff "came across the dividing line * * * he was changing lanes." Ryan identified the gouge mark in the pavement as being inside of the outside lane and said that the right front of the truck struck the left rear of the automobile.

The jury found that plaintiff failed to keep a proper lookout "to the rear of his vehicle" immediately before the accident, and that such failure was a proximate cause of the collision. Upon plaintiff's motion for judgment non obstante veredicto, the court disregarded the defensive lookout issues and entered judgment for the plaintiff upon the remaining findings of the jury. The action of the court in disregarding the lookout issues found against plaintiff and in refusing to enter judgment for defendants based thereon, forms the basis of the first two points urged by the defendants.

■ In passing upon such points, we recognize the rule stated by Chief Justice Calvert in C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.Sup., 1966) that:

"A jury's answer to a special issue may be disregarded only when it has no sup-

port in the evidence or when the issue is immaterial."

Or, as said by the same author in Texas & Pacific Railway Company v. McCleery, 418 S.W.2d 494, 496 (Tex.Sup., 1967), "In deciding whether there is such evidence [to support the jury's findings] we must honor the well established rule which requires that we view the evidence in its most favorable light in support of the verdict." We had occasion to review the authorities on the question in Harris v. Texas Employers' Insurance Association, 447 S.W.2d 211, 212–213 (Tex.Civ.App., Beaumont, 1969, error ref., n. r. e.).

The trial court was not authorized to disregard the jury's answers because the evidence might have been factually insufficient to support such answers; only if there was no evidence supporting the findings would such action have been proper. Garza v. Alviar, 395 S.W.2d 821, 824 (Tex. Sup., 1965); Burch v. Southwest Title Company, 450 S.W.2d 752, 753 (Tex.Civ. App., San Antonio, 1970, no writ).

The rule of law which places a duty upon a lead driver to keep a lookout for vehicles overtaking him from the rear is subject to some rather severe limitations. The defendants, with commendable candor, "recognize the very general rule in this State that a lead driver is under no duty to keep a lookout for traffic approaching from the rear" with certain exceptions noted in several cases which they cite.

Chief Justice Chadick in Hatcher v. Mewbourn, 457 S.W.2d 151, 153 (Tex.Civ. App., Texarkana, 1970, error ref., n. r. e.), has assembled the authorities upon the question and concludes from his examination:

"Summed up broadly, public policy imposes a duty upon a motorist when operating a vehicle on a public street to be alert and on watch for all that affects safe operation and is normally visible to him in the exercise of due care."

But, as was said by Justice Stephenson, speaking to the point more specifically in Bourbon v. Glover, 431 S.W.2d 650, 652 (Tex.Civ.App., Beaumont, 1968, no writ):

"The general rule in Texas is that the lead driver is under no duty to keep a lookout for traffic which approaches from the rear. Solana v. Hill, Tex.Civ. App., 348 S.W.2d 481. The exception to that rule is that a duty to look to the rear arises when the lead driver does something *such as changing his lane or direction,* stopping or suddenly decelerating. Berry v. Sunshine Laundries & Dry Cleaning Corp., Tex.Civ.App., 387 S.W. 2d 948." [Emphasis supplied]

Under the truck driver's version of the accident, *which comes to us without objection on the part of plaintiffs,* plaintiff's car "swerved into his lane of traffic and then back into—into his own" lane at the time of the accident; and plaintiff "came across the dividing line * * * he was changing lanes." Of course, plaintiff denied making any such move, stoutly contending that he maintained his straight course upon the outside lane near the shoulder. Plaintiff does not contend that he looked but the one time—when the truck was some thousand yards to his rear—nor does the plaintiff contend that he gave any signal of any intention to change from the outside to the inside lane of traffic. If the testimony vicariously attributed to the truck driver is to be believed, plaintiff suddenly changed his lane of travel without giving any signal of his intention so to do and without keeping any lookout to ascertain if the movement could be made in safety.

As said in Berry v. Sunshine Laundries & Dry Cleaning Corp., 387 S.W.2d 948, 949 (Tex.Civ.App., San Antonio, 1965, error ref., n. r. e.), "It is a settled rule that proper lookout is ordinarily a fact question." See also, Sneed v. Fort Worth Transit Company, 427 S.W.2d 920, 923 (Tex.Civ.App., Fort Worth, 1968, no writ), where additional authorities are listed.

In passing upon these points we " * * * must consider only the evidence and the

inferences tending to support the findings, and disregard all evidence and inferences to the contrary." Commercial Standard Insurance Company v. Allred, 413 S.W.2d 910, 913 (Tex.Sup., 1967). Or, as is set out in Martinez v. Welcome, 335 S.W.2d 254, 257 (Tex.Civ.App., San Antonio, 1960, error ref., n. r. e.) :

> "If there is any evidence of probative force, from which reasonable minds might come to the conclusion that the jury came to, then there is 'some evidence' to support the finding of the jury, and it is the duty of the court to enter judgment in keeping with such finding. The fact that there may be evidence to the contrary is immaterial."

There being "some evidence" to support the jury's answers to special issues nos. 15 and 16, it follows that the trial court erred in not rendering judgment for the defendants upon the basis of such findings. Harris v. Texas Employers' Insurance Association, supra (447 S.W.2d at p. 213). Accordingly, defendants' first two points are sustained.

■ Plaintiff has preserved properly two cross-points to protect himself in the event we sustained defendants' two points which we have previously discussed. He asserts, in separate cross-points, that "the jury's affirmative answer thereto [to no. 15 on proper lookout and to no. 16, finding proximate cause] is so against the great weight and overwhelming preponderance of the evidence as to be manifestly wrong and unjust." In passing upon these points, we are required to consider all of the evidence in deciding the questions so presented. Garza v. Alviar, supra (395 S.W.2d at p. 823).

From our review of the record, it is clear that the negligence of one of the drivers proximately caused the accident. Plaintiff was corroborated by the highway patrolman as to the point of impact—in the outside lane—and the photographs introduced into evidence lend further support to such a theory. The truck driver's statement to the plaintiff that he "must have dropped off to sleep" stands undenied in our record.

It is true that only the plaintiff testified to the statement of the truck driver, but the driver did not appear and deny the making thereof and his counsel has not attempted to deny either the making of the statement or the truth thereof. As an interested witness, the jury was not required to accept plaintiff's testimony; but, on the other hand, standing undenied as it does, it has some probative value. See the Texas authorities collected by Judge Goldberg in Taylor v. Bair, 414 F.2d 815, 818 (5th Cir., 1969). Under these circumstances, after a thorough consideration of all of the evidence on the question, we are of the opinion that the findings of the jury in response to special issues nos. 15 and 16 are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Plaintiff's crosspoints are, therefore, sustained.

Under the situation now prevailing under our prior holdings, the only order which we can enter is one of reversal of the judgment of the trial court and a remand of the cause for a new trial. See Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Texas Law Rev. 361, 369 (1960).

We have reviewed the remaining points of error found in the appeal of the defendants and none would require a rendition of the judgment of the court below. The matters now complained of may not arise upon a new trial and we pretermit discussion thereof.

There being error in the judgment below, the cause is reversed and remanded.